SANDRA CABRINA JENKINS, Judge.
1 ] Claimant/appellant, Catherine M. Dow, appeals the judgment of the Workers’ Compensation Judge (“WCJ”) rendered on August 5, 2014, which found that Ms. Dow *1225 had a compensable work-related injury in August 2013, but which failed to award her attorney’s fees and penalties based on the Appellees’ alleged unreasonable denial of her request for surgery to treat that injury.[1]
Ms. Dow also challenges the WCJ’s decision to award temporary total disability (“TTD”) benefits to Ms. Dow beginning on December 2, 2013, and not August 19, 2013, the date of her alleged disability. Appellees answered the appeal, arguing that the WCJ érred in finding that Ms. Dow had a compensable work-related injury in August 2013, and in failing to find that Ms. Dow committed workers’ compensation fraud.
For the reasons set forth below, we affirm the WCJ’s finding that Ms. Dow had a compensable work-related injury in August 2013, and that Ms. Dow was entitled to TTD benefits beginning on December 2, 2013. We also affirm the |2WCJ’s finding that Ms. Dow was not entitled to penalties and attorney’s fees based on Ap-pellees’ denial of her request for surgery. Finally, we affirm the WCJ’s finding that Ms. Dow did not make willful misrepresentations in order to obtain workers’, compensation benefits.
PROCEDURAL HISTORY AND BACKGROUND FACTS
A. Ms. Dow’s Alleged January 2013 Work-Related Injury.
In 2013, Ms. Dow was employed as a shift supervisor at a Wendy’s franchise in Chalmette, Louisiana. Ms. Dow alleges that on January 18, 2013 she injured her right shoulder while lifting a 50-pound pot of chili at work. On that day, Ms. Dow sought medical treatment at Pelican Urgent Care, telling the physician that she had injured her shoulder while picking up a storage container. While at Pelican Urgent Care, Ms. Dow completed a Patient History Form in which she elected not to check a box indicating that her shoulder problem was related to a job injury. The physician gave Ms. Dow a sling and referred her to an orthopedist. On January 22, 2013, Ms. Dow was seen by an orthopedist, Dr. Alan Cracco. Ms. Dow told Dr. Cracco that she was hurt lifting at home. Dr. Cracco prescribed narcotic pain medication, and on March 6, 2013 Ms. Dow underwent an MRI of her right shoulder. The MRI report stated that Ms. Dow had osteoarthropathy and tendinopathy in her right shoulder.
On June 10, 2Ó13, Dr. Cracco diagnosed Ms. Dow’s injury as pericapsulitis, sometimes referred to as “frozen shoulder.” Two weeks later, Dr. Cracco performed a closed manipulation of Ms. Dow’s right shoulder. Dr. Cracco’s pre-band post-operative diagnosis was adhesive capsulitis of the right shoulder. Dr. Cracco noted that his post-operative plan was to have Ms. Dow actively move her arm and follow physical therapy intensively. He noted that if Ms. Dow still had difficulty with full abduction actively, then a repeat MRI might be needed to exclude rotator cuff pathology.
B. Ms. Dow’s Alleged August 2013 , Work-Related Iryury.
Ms. Dow alleges that on August 17, 2013, she was the only manager on duty at Wendy’s. She states that a customer at the drive-through window ordered. three large milkshakes. Ms. Dow contends, that while she was stirring the milkshake in the shake machine, “the center arm grabbed a hold of the cup when it happened, it jerked *1226 [her] arm into it and' [she] a felt a bad shooting pain in [her] shoulder.” On August 26, 2013, Dr. Cracco examined Ms. Dow and again diagnosed her right shoulder injury as pericapsulitis or “frozen shoulder.”.
C. Ms. Dow’s January 2013 and August 2013 Workers’ Compensation Claims.
Shortly after Ms. Dow’s alleged August 17, 2013 work-related accident, Appellees submitted a Form 1007 Employer Report of Injury/Illness to the OWC. In this Form, Appellees reported Ms. Dow’s injury date as August 17, 2013, and described her injury as a “shoulder sprain.” The report described Ms. Dow’s work activity at the time of the injury as “[m]aking a [milk]shake when the cup got caught up in machine injuring right shoulder.”
On September 5, 2013, Appellees filed a Form 1002 Notice of Payment of Compensation in which Appellees reported to the Office of Workers’ Compensation (“OWC”) that Ms. Dow was being paid TTD benefits for her | ¿August 2013 accident, effective August 27, ¿013. On September 13, 2013, however, Ms." Dow submitted á Notice of Disagreement stating that the date of her shoulder injury was not August 17, 2013, but January 18, 2013.
In October 2013, more than nine months after her alleged January 2013 accident, Ms. Dow filed a Louisiana Workers’ Compensation (“LWC”) Form 1008, Disputed Claim for Compensation. Ms. Dow claimed that on January 18, 20Í3, she injured her right shoulder while lifting a pot of chili during the course and scope of her employment. Ms. Dow demanded that Appellees pay penalties and attorney’s fees for their failure to pay compensation and medical benefits arising from this alleged January 2013 work-related accident.
In November 2013, Appellees- filed an Answer to Ms. Dow’s workers’ compensation claim arising from her alleged January 2013 accident. Appellees denied that Ms. Dow had a compensable injury, and asserted that between January 18, 2013 and July 31, 2013 Ms: Dow never reported a work-related accident.
Meanwhile, on November 12, 2013, Dr. Cracco submitted an LWC Form 1010 to Wendy’s workers’ compensation insurer, LUBA Corp. (“LUBA”), requesting authorization to perform a closed manipulation and arthroscopic debridement of Ms. Dow’s right shoulder. Dr. Cracco .stated that the recomm.ended surgery was associated with an August 17, 2013 work-related accident, in which Ms. Dow claimed she injured her shoulder while making milkshakes. Attached to the Form 1010 was a November 7, 2013. report from Dr. Cracco, as well as a report of the results of an MRI taken on November 5, .2013. | ¡¡Both of these medical reports concluded that a comparison between Ms. Dow’s March 2013 MRI and her November 2013 MRI revealed new findings of a tear of the supraspinatus tendon in her right shoulder.
In response to Dr. Cracco’s request for surgery, on November 14, 2013, LUBA returned the Form 1010 with the notation that the ^‘treatment is denied” because “the claim is being denied as non-compen-sable.” ■ In a separate letter dated November 14, 2013, a LUBA medical services nurse advised Ms. Dow that her request for surgical treatment was “non-.certified” because “the adjuster handling this claim has denied the claim as non-compensable.”
However, in a follow-up letter dated November 15, 2013, LUBA claims adjuster Teri Hoover advised Ms. Dow that her request "for "surgery was being denied because a LUBA physician and nurse had reviewed and compared Ms. Dow’s March 2013 and November 2013 MRIs, and had *1227 concluded that there was “no noticeable difference” between the two.
In response to LUBA’s denial of her request for surgery, on December 10, 2013, Ms. Dow amended her Form 1008, Disputed Claim for Compensation arising from her January 2013 injury. Ms. Dow added a claim for penalties and attorney's based oil Appellees’ unreasonable denial of her request for surgery.
On December 30, 2013, Appellees answered Ms. Dow’s Amended Form 1008. Appellees admitted that they had denied the requested surgery as non-compensable because Ms. Dow did not sustain an accident and injury in the course Rand scope of her employment, and thus she was not entitled to any medical treatment.
On that same date, Appellees filed a Reconventional Demand alleging that Ms. Dow willfully misrepresented that she was injured at work in January 2013, and that she made these fraudulent misrepresentations for the purpose of obtaining workers’ compensation benefits. Appellees asserted that Ms. Dow sustained the alleged January 2013 injury at her home, and not in the course and scope of her employment at Wendy’s. Appellees further stated that, because they had paid medical and indemnity payments to Ms. Dow for this injury, they were entitled to receive restitution from Ms. Dow for those payments that were not due.
Prior to the five-day trial in March and June 2014, by mutual agreement, the par-, ties enlarged their pleadings to include the dispute over whether Ms. Dow sustained a compensable work-related injury ■ to her shoulder in August 2013. The parties stipulated that, as of the trial date, Appellees were voluntarily paying Ms. Dow TTD payments arising from this accident. The parties also stipulated that Appellees had authorized all medical treatment requested by Ms. Dow except for the November 12, 2013 request for closed manipulation and arthroscopic debridement of her right shoulder.
D. The WCJ’s Judgment.
After a five-day trial on the merits, the WCJ rendered a judgment dated August 5, 2014 (the “Judgment”) finding that: (1) Ms. Dow had a compensable work-related accident on August 17, 2013; (2) Ms. Dow failed to show she had a 17compensable work-related accident on January 18, 2013; (3) Ms. Dow’s pre-existing health problems were aggravated by the August .17, 2013 accident; (4) Ms. Dow proved a causal connexity between the August 17, 2013 accident and her disability; (5) Appellees were required to pay for all medical and travel expenses related to the August 17, 2013 accident; (6) Ms. Dow was entitled to weekly TTD payments from December 2, 2013 to the present and continuing; (7) Appellees would be given a credit for all workers’ compensation payments already paid; and (8) Appellees would pay all costs and interest.
The, Judgment did not address Ms. Dow’s demand for penalties and attorney’s fees based on Appellees’ alleged unreasonable denial of her request for authorization for surgery. The Judgment also did not address .Appellees’ Reconventional Demand asserting that Ms. Dow willfully made misrepresentations regarding her alleged January 2013 shoulder injury for the purpose of obtaining workers’ compensation benefits. .
On August 11, 2014, Ms.- Dow filed a Motion fór New Trial limited solely to her claim for penalties and attorney’s fees based on the Appellees’ unreasonable denial of Dr. Cracco’s request for shoulder surgery. On November 5, 2014, the WCJ rendered a judgment denying Ms. Dow’s Motion for New Trial. This appeal followed.
*1228 LAW AND ANALYSIS
This Court has jurisdiction to review direct appeals from administrative agency determinations in workers’ compensation matters under La. Const, art. V § | S10(A). Aisola v. Beacon Hosp. Mgmt., Inc., 13-1101, p. 8 (La.App. 4 Cir. 4/2/14); 140 So.3d 71, 77. In our review, this Court is “mindful of the jurisprudential tenet that the workers’? compensation statute is to be liberally construed in favor of coverage.” Id. Consistent with this principle, we review factual findings under the manifest error/clearly wrong standard of review. Id. However, “‘[wjhen legal error interdicts the fact-finding process in a workers' compensation proceeding,’ our review of those findings is conducted de novo.’” Id. (quoting Tulane Univ. Hosp. & Clinic v. Lockheed Martin Corp., 11-0179, p. 3 (La.App. 4 Cir. 6/29/11); 70 So.3d 988, 990). We likewise review the WCJ’s legal conclusions de novo. Aisola, 13-1101 at pp. 8-9; 140 So.3d at 78.
A. Ms. Dow’s Assignment of Error No. 1: The WCJ Erred in Rejecting Her Claim for Penalties and Attorneys’ Fees Based on Appel-lees’ Unreasonable Refusal to Au- ‘ thorize Medical Treatment.
In her first assignment of error, Ms. Dow contends that she is entitled to penalties and attorney’s fees under La. R.S. 23:1201(F) based on Appellees’ unreasonable denial of her treating physician’s request for authorization to perform shoulder surgery. Ms. Dow does so on two grounds. First, Ms. Dow argues that the LUBA claims adjuster improperly denied her request for treatment on the grounds that Ms..Dow’s claim was “non-compensa-ble,” rather than for specified medical reasons, as required by La. R.S. 23:1203.1.
Ms. Dow also argues the LUBA claims adjuster improperly denied her treatment request without reference to the medical treatment guidelines established Runder La. R.S. 23:1203.1, and based solely on the adjuster’s own review of Ms. Dow’s medical records.
1. Procedure for Requesting Medical Treatment Under La. R.S. 23:1203.1, et seq.
Enacted by the legislature in 2009 and effective on June 25, 2010, La. R.S. 23:1203.1 is the product of a combined effort by employers, insurers, workers, and medical advisors to establish meaningful guidelines for the treatment of injured workers. Church Mutual Ins. Co. v. Dardar, 13-2351, p. 8 (La.5/7/14); 145 So.3d 271, 278. Because of the dissatisfaction with a process for obtaining needed medical treatment that was cumbersome, uncertain and expensive, employers and their insurers perceived a need for guidelines that would ensure them that the treatment recommended by a medical provider was generally recognized by the medical community as proper and necessary. Church, 13-2351 at p. 5; 145 So.3d at 275-76. At the same time, employees and their medical advisors were concerned about the unreasonable delays regularly encountered in obtaining approval for treatment when disputes arose as to the necessity for the treatment. Id.
In response, the legislature enacted La. R.S. 23:1203.1 with the express intent that “medical and surgical treatment, hospital care, and other health care provider services shall be delivered in an efficient and timely manner to injured employees.” Church, 13-2351 at p. 5; 145 So.3d at .276 (quoting La. R.S. 23:1203.1(L)).
ImLa. R.S. 23:1203.1 requires the Director of the OWC to appoint a medical advisory council which, with the assistance of a medical director, is to develop medical treatment guidelines to be promulgated as the medical treatment schedule (“MTS”). Church 13-2351 at pp. 5-6; 145 So.3d at 276 (citing La. R.S. 23:1203.1(E), (F),(G)). *1229 Thereafter, the treatment due by the employer to the employee “shall mean care, services, and treatment in accordance with the [MTS].” La. R.S. 23:1203.1(1). A request for surgery falls under the term “medical care, services, and treatment” due under La. R.S. 23:1203.1. Aisola, 13-1101 at p. 24; 140 So.3d at 86.
The procedure for obtaining care, services, or treatment under La. R.S. 23:1203.1 is as follows: (1) the medical provider submits to the employer/insurer a request for authorization; (2) the employer/insurer then must notify the medical provider of their action on the request within five business days of receipt of the request; (3) if any dispute arises as to whether the recommended care, services, or treatment is in accordance with the MTS, or whether a variance from the MTS is reasonably required, any aggrieved party must file, within 15 calendar days, an appeal with the OWC medical director or associate director on Form 1009, Disputed Claim for Medical Treatment; (4) the medical director/associate medical director must render a decision as soon as practicable, but in no event, not more than 30 calendar days from the date of filing; (5) after the decision |nby the medical director/associate medical director, any party who disagrees with the decision may appeal by filing a Form 1008 Disputed Claim for Compensation; (6) the decision by the medical director/associate medical director may be overturned only when it is shown, by clear and convincing evidence, the decision was not in accordance with the provisions of La. R.S. 23:1203.1. See La. R.S. 23:1203.1(J)(1), (K).
2. Denial of Request for Medical Treatment As Non-Compensable.
Ms. Dow challenges the denial of her request for treatment on alternative grounds. First, she argues that her request was improperly denied as “non-com-pensable,” in violation of La. R.S. 23:1203.1.
The record shows that on November 11, 2013 Dr. Cracco submitted a Form 1010 request for authorization to perform right shoulder surgery. On November 11, 2003, LUBA returned the Form 1010 with the notation: “The. requested Treatment or Testing is denied ... as non-compensa-ble.” By letter dated November 14, 2013, a LUBA medical services nurse advised Dr. Cracco that the request was “non-certified” because the “adjuster handling this claim has denied the claim as non-compensable.”
The denial of a request for medical treatment on the grounds that the injury is “non-compensable” is not governed by La. R.S. 23:1203.1. Form 1009, which is the form used for an appeal to the medical director, states that “[disputes relating to compensability and/or causation are not addressed by the medical director.” Under La. R.S. 23:1142(E), if an insurer/employer denies that an employee’s injury is compensable under the workers’ compensation statute, then no approval from the insurer/employer is required prior to the provision of any treatment for |12that injury. Ms. Dow, therefore, has no claim for penalties and attorney’s fees arising from Appellees’ refusal to approve shoulder surgery as non-compensable.
3. Denial of Request for Medical Treatment Based on Review of Medical Evidence.
In a letter dated November 15, 2013, a LUBA claims adjuster advised Ms. Dow that a LUBA physician and nurse had reviewed and compared Ms. Dow’s March 2013 and November 2013 MRIs, and had concluded that there was “no noticeable difference” between the two MRIs.[2] Be *1230 cause LUBA provided Ms. Dow with timely notice of its denial of her request for treatment on the basis of its review of medical evidence, we find that her dispute is governed by La. R.S. 23:1203.1.
Under La. R.S. 23:1203.1, Ms. Dow was required to appeal LUBA’s denial of her request by timely filing a Form 1009, “Disputed Claim for Medical Treatment.” In the parties’ Joint Trial Stipulations, Ms. Dow stipulated that she did not file a Form 1009. A stipulation has the effect of a judicial admission or confession, which binds the parties and the courts. R.J. D’Hemecourt Petroleum, Inc. v. McNamara, 444 So.2d 600, 601 (La.1983).
La. R.S. 23:1314(D) governs the effect of a claimant’s failure to properly appeal an insurer’s denial of medical treatment under La. R.S. 23:1203.1: “Disputes over medical treatment pursuant to the medical treatment schedule shall be premature unless a decision of the medical director has been obtained in | ^accordance with R.S. 23:1203.1(Jj,” (Emphasis added.) As discussed above, Section 23:1203.1(J) governs the mandatory appeal to the OWC medical director from an employer/insurer’s denial of a request to approve medical treatment.
Under La. R.S. 23:1314(0), “[t]he workers’ compensation judge shall determine : whether the petition is premature and must be dismissed before proceeding with the hearing of the other issues involved with the- claim.” (Emphasis added.)
The WCJ denied Ms: Dow’s Motion for New Trial, which was based solely on her claim for penalties and attorney’s fees based on the Appellees’ alleged unreasonable denial of medical treatment. The record, however, does not show that the WCJ ever initially determined whether Ms. Dow’s claim for penalties- and attorney’s fees was premature, and should be dismissed pursuant to La. R.S, 23:1314(C) and (D). Because we find that legal error interdicted the fact-finding process, our review of this issue is de novo. Aisola, 13-1101 at p. 8; 140 So.3d at 77-78.
We recognize that decisions from the First Circuit hold'that'an employer/insurer waives a challenge to prematurity under La. R.S. 23:1314 by not timely filing a dilatory exception of prematurity under the Louisiana Code of Civil Procedure. See Wilson v. St. Mary Cmty. Action, 00-2106, p. 7 (La App. 1 Cir. 12/28/01); 803 So.2d 1106, 1111 — 12; La. Commerce & Trade Ass’n v. Cruz, 09-2014, p. 8 (La. App. 1 Cir. 5/7/10); 38 So.3d 1041, 1045,
|uWe decline to follow these decisions. The workers’ compensation statute expressly provides -that a workers’ compensation judge “is not bound by the technical rules of evidence or procedure other-than as herein provided,” La. R.S. 23:1317(A). See also Mitchell v. Accent Constr. Co., 00-0996, p. 2 (La.App, 4 Cir. 3/14/01); 785 So.2d 864, 866 (“the technical rules of the Code of Civil Procedure do not apply to workers’ compensation cases”). La. R.S. 23:1314(C) and (D) do not impose any procedural limitations or restrictions on the workers’ compensation judge’s duty to decide prior to trial whether a claim for penalties and attorney’s fees based on a refusal to approve -treatment is premature, and must be dismissed.
Thus, in determining the issue of prematurity under La. R.S. 23:1314, workers’ compensation judges are not bound by the articles in the Louisiana Code of Civil Procedure requiring the filing of an excep *1231 tion of prematurity prior to or with the filing of the Answer.
We also recognize earlier decisions requiring the' filing of a timely exception of prematurity in workers’ • compensation cases filed in the district courts: See, e.g., Turner v. Maryland Casualty Co., 518 So.2d 1011, 1014-15 .(La.1988); Rich v. Geosource Wireline Servs., Inc., 490 So.2d 1165, 1170 (La.App. 3d Cir.1986). These opinions were rendered before the Louisiana legislature substantively changed the administrative structure of the Worker’s Compensation Act by Acts 1988, No. 938. Effective January 1, 1990, the legislature conferred subject matter jurisdiction upon OWC hearing officers instead of the district courts. See Tran v. Schwegmann's Giant Super Market, 609 So.2d 887, 888 (La.App. 4th Cir.1992). In these pre-1990 cases, therefore, the district courts deciding workers’ compensation claims properly applied the dilatory exception of prematurity articles of the Code of Civil Procedure.
We conclude that under La. R.S. 23:1314(C) and (D), the WCJ was required to determine, as a threshold matter, whether Ms. Dow’s claim for penalties and attorney’s fees was premature because she had not appealed the denial of medical treatment to the OWC medical .director, as required by La. R.S. 23:1203.1(J)(1). If the claim was premature, the WCJ was required to dismiss the claim. Based on our de novo review of the record, we find that because Ms. Dow did not appeal her dispute over medical treatment to the medical director, Ms. Dow’s claim for penalties and attorneys’ fees should have been dismissed as premature prior to trial.
B. Ms. Dow’s Assignment of Error No. 2: The WCJ Erred in Failing to Award TTD Benefits Beginning on August 19,2013.,
The WCJ’s Judgment, awarded weekly TTD payments to Ms. Dow from December 2, 2013 to the present and continuously. Ms. Dow asserts that the WCJ erred in failing to award her TTD benefits beginning on August 19, 2013, the date that Ms. Dow allegedly became disabled.
The workers’ compensation statute provides that an employee who suffers a workplace injury shall be awarded TTD benefits only' when the employee proves by clear and convincing evidence, unaided by any presumption of disability, that the employee “is physically unable to engage in any employment or self-employment, regardless of the nature or character of the employment or self-liaemployment.”’ La. R.S. 23:1221(1)(C). The fact-finder must weigh all the evidence, medical or lay, in order to determine if the workers’? compensation claimant has met her burden of proof with respect to a claim for TTD benefits; this factual finding should be given great weight and should not be overturned absent manifest error. Bolton v. Grant Parish Sch. Bd., 98-1430, p. 4 (La.3/2/99); 730 So.2d 882, 885. '
The medical evidence shows that on August 26, 2013, Dr. Cracco reported that Ms. Dow could not resume work. On October 22, 2013, however, Dr. Cracco released Ms. Dow to work as a “modified shift supervisor,” in which she could work the cash .window, wipe tables and operate the cash register only with her “non-symptomatic arm.” Ms. Dow was scheduled to return to work on November 1, 2013. In mid-November, it was reported that Ms. Dow had réturned to work on November 1, but that she complained that the position was “challenging to her.” Between November 26, 2013 and December 19, 2013, Dr. Cracco reported that Ms. Dow. could not work.
There is ^contradictory , evidence, however, regarding ■ the time periods in which Ms. Dow was entitled to TTD benefits. *1232 On a monthly basis, Ms. Dow submitted a Form 1020 to LUBA, in which she was required to report salary and wages during that month. In these forms, Ms. Dow reported receiving wages between August 18 and September 17, 2013; and between October 18 and December 17, 2013. Compensation cannot be awarded for those periods in which Ms. Dow was employed. La. R.S. 23:1221(l)(b).
Based on this contradictory medical and lay evidence, we cannot say that Ms. Dow proved by clear and convincing evidence her entitlement to TTD benefits |-i .¡beginning on August 19, 2013, or that the WCJ was manifestly erroneous in finding that Ms. Dow’s TTD benefits commenced on December 2,2013.
C. Appellees’ Answer to Appeal.
Appellees filed an Answer to Appeal, arguing that the WCJ erred in finding that Ms. Dow had a compensable work-related accident on August 17, 2013. Appellees also argue that the WCJ erred in not finding that Ms. Dow willfully made fraudulent statements in order to obtain workers’? compensation benefits.
1. Appellees’ Argument No. 1: Ms. Dow Did Not Have a Compensable Work-Related Accident in August 2013.
An employee is entitled to workers’ compensation benefits if she suffers personal injury by an accident arising out of and in the course of employment. Merrill v. Greyhound Lines, Inc., 10-0834, p. 6 (La.App. 4 Cir. 6/29/11); 70 So.3d 991, 995. The chain of causation required by the statutory scheme is that the employment causes the accident, the accident causes the injury, and the injury causes disability. Id. (citing La. R.S. 23:1031). The employee has the burden of proving, by a preponderance of the evidence, that the resulting disability is related to -an on-the-job injury. Id.
In deciding whether the claimant has discharged her burden of proof, the fact-finder “should accept as true a witness’s uncontradicted testimony, although-the witness is a party, absent circumstances casting suspicion on the reliability of the testimony’” Bruno v. Harbert Int’l, Inc., 593 So.2d 357, 361 (La.1992). Where, however, there is contradictory testimony, the fact-finder’s reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on appeal. Merrill, 10-0834 at pp. 6-7; 70 So.3d at 995.
[1RAt trial, Ms. Dow testified that on August 17, 2013, she was stirring a milkshake in the shake machine at work, and “the center arm grabbed a hold of the cup when it happened, it jerked [her] arm into it and [she] felt a bad shooting pain in [her] shoulder.” Ms. Dow stated that the shake machine that stirred the milkshake in the cup “caught the corner of the bottom of the cup like a propeller.”
Ms. Dow argues that her version of these events was corroborated by the testimony of her coworkers, who she says witnessed the incident. Ms. Dow testified that Angela Kelly, a crew member at Wendy’s, “was looking [her] way when it happened.” Ms. Kelly, however, testified that she did not physically see Ms. Dow’s alleged accident. Ms. Kelly stated that she heard Ms. Dow cry out, which caused her to turn around and ask Ms. Dow what happened.
Wendy’s manager Angela Wise testified that when she came into the restaurant she saw Ms. Dow “putting something in a Frosty, you know, getting to make a shake.” Ms. Wise also testified, however, that she went back to check the schedule, and then children came running up to her and told her that “Cathy” got hurt. Ms. Wise’s testimony suggests that she also *1233 did not witness Ms. Dow’s alleged accident.
An employee’s testimony alone will not suffice to support her claim if coworkers are unable to confirm her version of events or if they deny that things proceeded in the manner indicated by the claimant. LaFrance v. Weiser Security Serv., Inc., 01-1578, pp. 6-7 (La.App. 4 Cir. 3/27/02); 815 So.2d 339, 344. As discussed above, there were conflicts betweén the trial testimony of Ms. Dow and other Wendy’s employees regarding the circumstances surrounding Ms. Dow’s alleged injury.
11sAlthough the WCJ was not required to accept Ms. Dow’s testimony as true, given the deference accorded to the WCJ’s assessments of the credibility of witnesses, along with the reasonable inferences drawn by the WCJ from the record as a whole, we conclude that the WCJ was not manifestly erroneous in concluding that Ms. Dow proved by a preponderance of the evidence that she sustained a compensable injury from the August 2013 work-related accident.
2. Appellees’ Argument No. 2: Ms. Dow Committed Workers’ Compensation Fraud
The WCJ Judgment did not address Appellees’ Reconventional Demand, which asserted that Ms. Dow willfully made false statements or representations regarding her alleged January 2013 accident for the purpose of obtaining workers’ compensation benefits. When a judgment is silent as to part of relief requested by a workers’ compensation claimant, the judgment is deemed to have denied that relief. Rhone v. Boh Bros., 01-0270, p. 5 (La.App. 4 Cir. 12/12/01); 804 So.2d 764, 768.
Appellees rely on the fraud provisions of the workers’ compensation statute, La. R.S. 23:1208(A), which state that “[i]t shall be unlawful for any person, for the purpose of-obtaining or defeating any benefit or payment ... to willfully make a false statement or representation.” In additional to criminal and civil penalties, the fraud provisions state that any person violating Section 1208 “may be ordered to make restitution”- and “shall forfeit any right to compensation benefits under this Chapter.” La. R.S. 23:1208(D), (E). Fraudulent statements encompass those made to anyone, including the employer, physicians, or insurer. Resweber v. Haroil Constr. Co., 94-2708, pp. 1-2 (La.9/5/95); 660 So.2d 7, 9. Forfeiture of workers’ 1 ^compensation benefits due to a claimant’s fraud is a harsh remedy. Herrera v. Cajun Co., 06-1627, p. 7 (La.App. 4 Cir. 6/6/07); 960 So.2d 1161, 1166.
La. R.S. 23:1208 does not penalize any false statement, but only those willfully made for the purpose of obtaining benefits. Resweber v. Haroil Constr. Co., 94-2708, p. 15 (La.9/5/95); 660 So.2d 7, 16. The relationship between the false statement and the pending claim will be probative in determining whether the statement was made willfully for the purpose of obtaining benefits. Id.
The WCJ concluded that Ms. Dow failed to show that she had a compensable work-related accident on January 18, 2013. Because the WCJ found that Ms. Dow failed to prove entitlement to benefits, she apparently found it unnecessary to rule on the issue of whether Ms. Dow made false statements to obtain benefits under La. R.S. 23:1208. We likewise find it unnecessary. Johnson v. T & J Hauling Co., 46,853, pp. 13-14 (La.App. 2 Cir. 1/25/12); 86 So.3d 1, 8.
Appellees also argue that Ms. Dow should forfeit her workers’ compensation benefits related to her August 2013 accident because that claim was based in part on fraudulent statements that she made regarding her January 2013 accident.
*1234 Ms. Dow never misrepresented that she had no prior shoulder injury.' The only inconsistencies in her statements related to whether the alleged injury was caused at home or at work.
The WCJ found that Ms. Dow “had pre-existing shoulder problems which were aggravated by the accident on August 17, 2013.” Appellees did not challenge this finding. A pre-existing condition does not bar á claimant’s recovery. Blanque v. City of New Orleans, 612 So.2d 948, 951 (La.1993). We find that the statements made by Ms. Dow regarding her January 2013 shoulder injury were related to her August 2013 claim for benefits only to the extent that these earlier 121 statements might show that her August 2013 injury aggravated or accelerated her pre-existing shoulder injury. See Merrill, 10-0834 at p. 6; 70 So.3d at 995. (holding that even if the claimant suffered from a pre-existing medical condition, she may still meet her burden of proof of causation between accident and injury if she proves that the accident aggravated, accelerated or combined with the pre-existing condition to produce an injury resulting in a compensable injury).
Based on our review pf the record, we find that the relationship between Ms. Dow’s misrepresentations regarding her January 2013 accident and her August 2013 claim for benefits is tod attenuated to find willful misrepresentation for the purpose of obtaining workers’ compensation benefits.
CONCLUSION
For the foregoing reasons, we affirm the WCJ’s denial of Ms. Dow’s claim for attorney’s fees and penalties based on Appel-lees’ refusal to approve medical treatment because Ms. Dow did not appeal the deck sion to the OWC medical director, as required by La. R.S. 23:1203.1(J)(1). We also affirm the findings of the- WCJ that Ms. Dow had a compensable work-related accident on August 17, 2013, and that Ms. Dow’s TTD benefits should begin on December 2, 2013. Finally, we affirm the WCJ’s finding that Ms: Dow did not commit workers’ compensation fraud.
AFFIRMED.

. On November 5, 2014, the WCJ denied Ms. Dow's Motion for New Trial based solely on her claim for penalties and attorney’s fees based on Appellees’ refusal to approve medical treatment.

. At trial, the LUBA claims adjuster, Teri Hoover, testified that LUBA denied Ms. Dow's *1230 request for treatment based on medical reasons, and not because of non-compensability. She testified that the November 14, 2013 LUBA notice advising Ms. Dow. that her request was being denied as non-compensable was a “clerical error” or a possible "misunderstanding.”